**FEDERAL LAND BANK ASSOCIATION OF ASHEVILLE, NORTH CAROLINA, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**MOUNTAIN PRODUCTION CREDIT ASSOCIATION, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**Nos. 76–2407, 76–2408.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1977.

Decided March 21, 1978.

---

**180**

John S. Nolan, Washington, D. C. (Gary G. Quintiere, Miller & Chevalier, Washington, D. C., on brief), for appellants.

Michael J. Roach, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Grant W. Wiprud and George G. Wolf, Attys. Tax Div., Dept. of Justice, Washington, D. C., on brief), for appellee.

Before WINTER and RUSSELL, Circuit Judges, and FIELD, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge:

The petitioners appeal from a dismissal on jurisdictional grounds of their declaratory judgment proceedings, filed under the provisions of § 7476, 26 U.S.C., for the purpose of securing a reversal of a determination of disqualification by the respondent-Commissioner under the Internal Revenue Code of their pension plan for the plan year commencing September 1, 1973.

The jurisdictional issue posed by the appeal turns upon the proper construction of § 7476, 26 U.S.C., enacted on September 2, 1974, as a part of the Employee Retirement Income Security Act (ERISA), 88 Stat. 829. There is no dispute about the facts which frame for decision this jurisdictional issue. The petitioners adopted the pension plans in question in 1973. The first year of the plans began September 1, 1973. On May 20, 1974, the petitioners applied to the Commissioner for a determination of qualification of the plans for that first plan year. At the time ERISA had not been enacted and there was no provision either by statute or administrative regulation for any method of notifying interested employees of the filing of such application for a qualification determination or of affording them a hearing at the administrative level. In February, 1976, the Commissioner issued his determination of disqualification for the plan year for which qualification had been sought.

In the meantime, ERISA had been enacted on September 2, 1974. It included two provisions relevant to this appeal. Section 3001[1] provided that any applicant for a qualification determination by the Secretary of the Treasury should "provide evidence satisfactory to the Secretary that the applicant has notified each employee who qualifies as an interested party * * * of the application for a determination" and upon request to "afford [such interested party as well as certain other parties] an opportunity to comment on the application at any time within 45 days after receipt

---

1. Codified as § 1201, 29 U.S.C.

* * *." [2] This section, however, was declared not to "apply with respect to an application for any plan received by the Secretary of the Treasury before the date on which section 410 of the Internal Revenue Code of 1954 * * * applies to the plan * * *." [3] Section 410, 26 U.S.C., is applicable only to "plan years beginning after December 31, 1975" for any pension plan such as that of the petitioners, which was "in existence on January 1, 1974." [4] Since the plan years of the petitioners' plan ran from September 1 to August 31, Section 410 did not apply until their plan year beginning September 1, 1976.

The other provision of ERISA, which is pertinent to this appeal, is § 7476, which authorizes a declaratory action proceeding in the Tax Court "[i]n a case of actual controversy involving (1) a determination by the Secretary * * * with respect to the initial qualification or continuing qualification of a retirement plan * * *." The effective date for § 7476 is fixed at one year after the enactment of ERISA.[5] Since ERISA was enacted on September 2, 1974, the effective date for § 7476 was after September 2, 1975. There are a number of limitations attached by the statute to the right to institute a proceeding thereunder. The limitation which is involved on this appeal is set forth in subsection (b)(2) of the statute:

"For purposes of this section, the filing of a pleading by any petitioner may be held by the Tax Court to be premature, unless the petitioner establishes to the satisfaction of the court that he has complied with the requirements prescribed by regulations of the Secretary * * * with respect to notice to other interested parties of the filing of the request for a determination referred to in subsection (a)."

Following the Secretary's determination of disqualification of their plans, the petitioners filed their proceedings for a declaratory judgment under the authority of § 7476 in April, 1976. Conceding that the petitioners had met all other jurisdictional conditions for the maintenance of a proceeding under § 7476, the respondent moved to dismiss solely for failure to comply with the notice requirements of subsection (b)(2), quoted *supra*. The position of the petitioners in reply was that the plan year in controversy was expressly exempt from compliance with the notice provisions referred to in subsection (b)(2) by the terms of § 3001 and § 410. They argued that absence of compliance with a provision thus plainly inapplicable to the plan year of controversy was not a bar to their right to invoke § 7476 jurisdiction. The Tax Court adopted the position of the respondent and dismissed the petitions on jurisdictional grounds. This appeal followed.

We reverse.

The resolution of this appeal turns on a construction of § 7476 and more particularly subsection (b)(2). In such construction, we have no precedents to guide us and but scanty legislative history. We are thus forced to deduce construction largely from the language of the statute itself. It is the thesis of the Tax Court's opinion that subsection (b)(2) of the statute by clear language restricts the applicability of § 7476 solely to determinations by the Commissioner made after the effective date of the notice requirement of § 3001. The Tax Court recognized that the cited subsection does not expressly refer to § 3001, but it reasoned that the language of the subsection as well as that of the preceding subsection (b)(1), could be read in no other way than as incorporating § 3001 and its notice provision as an essential condition to jurisdiction under § 7476. Following this reasoning, it concluded that the petition should be dismissed for failure to give the notice described in (b)(2) and that it was immaterial that at the time the petitioners filed their applications with the respondent for an administrative determination there was no

2. § 3001(a) and (b).

3. § 3001(e).

4. § 1017, P.L. 93–406.

5. § 1041(d), P.L. 93–406.

statutory provision for notice with which they could comply.

■ We find no real fault with this reasoning of the respondent insofar as it assumes merely that the notice to interested parties described in subsection (b)(2) is that prescribed under § 3001. What we are unable to agree with is the deduction from this that compliance with the notice provision of § 3001 is an absolute jurisdictional prerequisite for proceedings under § 7476 and that simply because the petitioners were unable to comply with such notice requirement their proceeding must be dismissed. There are a number of reasons for our conclusion.

In the first place, this reasoning of the Tax Court rests on the construction of subsection (b)(2) as a declaration of an inflexible mandatory requirement of compliance with the § 3001 notice provision by any petitioner seeking to invoke § 7476 jurisdiction. But (b)(2) is not cast in mandatory terms; rather, it is phrased in permissive terms and confers on the Tax Court discretion to enforce or waive the notice provision referred to therein. And the respondent has conceded on this appeal that the subsection by its provision dealing with notice imposes no absolute bar to jurisdiction but merely confers on the Tax Court a discretion to entertain or dismiss the action, as fairness and justice warrant. But, while conceding the discretionary character of the limitation, the Tax Court proceeds in its result to apply the limitation as an absolute prerequisite to § 7476 jurisdiction. In effect, its decision excises discretion from the subsection. The subsection, moreover, contemplates that the Tax Court shall exercise discretion, a discretion which may not be arbitrary but must be supported by articulable reasons.[6] Thus, it will not do merely to declare, as did the Tax Court here, that (b)(2) bars any proceeding under § 7476 where compliance with the notice provision of § 3001 is absent, for that would be giving

to the subsection a mandatory construction, something Congress clearly did not intend by its permissive language.

Nor is the legislative purpose in making (b)(2) discretionary entirely obscure. While we have no legislative history to illuminate this purpose, a review of the several relevant provisions of the Act provides rather definite guidance for divining such purpose. As we have noted, the effective date of § 7476, as fixed by Congress was different from that for compliance with § 3001. It would, however, appear unreasonable to assume that Congress intended to provide a judicial proceeding and give it an effective date which had to remain in limbo until some other legislation subsequently became effective. If Congress had intended to create such a hiatus in the application of § 7476 and to make its use absolutely dependent on the availability of § 3001, it would have harmonized the two statutes by giving to them an identical effective date. From the absence of any integration of the effective dates of the two sections it logically would seem to follow that Congress contemplated that there would be proceedings properly brought under § 7476 in which the petitioner would not have complied with § 3001. And, while it may not have been specifically intended by Congress as one of the situations in which the notice requirement was to be waived, it is difficult to envision a situation more compelling of waiver of the notice requirement than one where, as here, the petitioners, as the respondent concedes, could not have given the notice required under § 3001 but where they have otherwise complied with all mandatory provisions for jurisdiction under § 7476.

It is the respondent's position, however, that no weight should be given this difference in effective dates for § 7476 and § 3001—that the difference should be dismissed as simply a matter of legislative oversight. This argument is, however, contradicted by the very careful way in which

---

**6.** *Citizens to Preserve Overton Park v. Volpe* (1971) 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136; *Appalachian Power Co. v. Environmental Pro. Agcy.* (4th Cir. 1973) 477 F.2d 495, 507; *Ely v. Velde* (4th Cir. 1971) 451 F.2d 1130, 1138–1139; *Environmental Defense Fund, Inc. v. Ruckelshaus,* 142 U.S.App.D.C. 74, 76, 439 F.2d 584, 586.

Congress throughout the Act fixed different effective dates for the application of the many provisions of this intricate and involved Act.[7] Moreover, Congress did so, as it clearly declared, because of its desire to give existing employers ample opportunity to adjust their plans to conform to the new provisions. If Congress had intended to tie inexorably § 7476 jurisdiction to § 3001 and its effective date, it could easily have done so. In two other instances where it provided for declaratory judgment jurisdiction in the Tax Court similar to that involved here, it incorporated in the statute granting such right of action not merely an effective date for the right of action but also limited the tax "determinations (or requests for determinations)" which could be the subject of litigation therein by providing that the contested determinations had to be made before a stated date.[8] The absence of any similar added limitation in § 7476 strongly suggests, if it does not compel, the conclusion that, contrary to the contention of the respondent, it was not the Congressional purpose to limit jurisdiction thereunder strictly to applications for an administrative determination filed after § 3001 became effective.

The respondent insists, however, that permitting the petitioners to proceed under § 7476 without compliance with the notice provision of § 3001 would frustrate an overriding purpose of ERISA. It may be conceded that notice to all interested parties at all stages of its qualifying procedures, whether administrative or judicial, was one of the purposes of ERISA. It does not,

however, necessarily follow that, absent such notice compliance, § 7476 jurisdiction will not exist. If it did, then (b)(2) would have been couched in absolute mandatory terms. And the reason it was not so couched may well have been that § 7476 had another purpose, one not entirely related to the purposes of ERISA itself. Congress found justification for § 7476 in a need to relieve the taxpayer from the unfairness of being provided with no effective form of judicial review of tax deductibility of retirement plan contributions other than that available through the slow deficiency process. The absence of such a remedy often operated to coerce a taxpayer in agreeing with the Service's determination of disqualification even though he felt that his position was right. This justification was clearly expressed in the legislative reports and is not disputed by the respondent.[9] It seems likely that this justification was sufficiently strong in Congress' mind that, while it contemplated that the notice requirement would ordinarily be followed in proceedings under § 7476, it wished the Tax Court to have power to waive such a requirement in favor of a petitioner who, through no fault of his own, may have been unable to give the notice. And the permissiveness of (b)(2) is persuasive confirmation of such a Congressional feeling. Were we to follow the contrary reasoning of the Tax Court, we would frustrate the Congressional purpose of giving to the statute a permissive character.

7. *See*, § 2005(d), § 4082(a), § 111(b)(1), § 1017(b) and § 1034(a), ERISA.

8. *See*, § 1306(c), Pub.L. 94–455, § 7428, 26 U.S.C., Tax Reform Act of 1976 (charitable organization qualification; restricted to a determination after January 1, 1976); § 1042(d)(e), Pub.L. 94–455, § 7477, 26 U.S.C., Tax Reform Act of 1976 (property transfers; restricted to "transfers beginning after October 9, 1975.")

9. The legislative history is as follows:
   "As a practical matter, there is no effective appeal from a Service determination (or refusal to make a determination) that a proposed pension plan fails to qualify for the special tax benefits. In these cases, although

there may be a real controversy between the employer and the Service, present law permits the employer to go to court only after he has made contributions to the plan, deducted them, and had those deductions disallowed. The long time period and the related uncertainty coupled with the threat of the ultimate loss of the tax deduction, almost always causes the employer to go along with the Service, even if he disagrees with the Service's position. In addition, the determination letter procedure does not permit employees, or their unions, to question the qualification of plans." U.S.Code Cong. & Admin. News, 93rd Cong., 2d Sess. 1974, p. 4996.

Nor are we much taken with the respondent's argument that a denial of absoluteness to the requirement of (b)(2) in this case will deny to the interested employees under petitioners' plans a right of hearing. Under the provisions of ERISA those employees had no right to a hearing in connection with the administrative consideration of petitioners' application for qualification; the application for qualification preceded the adoption of ERISA and the effective date of § 3001. And, if the respondent were to prevail on this appeal, the interested employees would never acquire any right to a hearing, either administratively or judicially. This is so, because, in that event, the petitioners would be required to pursue their claims of qualification under the slow deficiency procedures, to which the only parties would be the petitioners and the respondent. Actually, if the respondent or the Tax Court is concerned that the interested employees are not being given a voice in the proceeding, there is an easy method to provide them with such a voice, at least in the proceeding in the Tax Court: In fashioning its procedures under § 7476, there is nothing to prevent the Tax Court from requiring that all petitioners give notice to interested employees of the filing of their proceedings under § 7476. As a matter of fact, such a procedure was contemplated under the original draft of § 7476.[10]

Finally, we can only speculate as to why the respondent opposes jurisdiction in this case. The only reason apparent for his position in this regard is the one suggested in the legislative report justifying the enactment of § 7476, i. e., that if the petitioners are delayed in a judicial review of the Commissioner's disqualification, it is likely they will abandon their objection and will feel coerced "to go along with the Service, even if [they] disagree with the Service's position." This result would, however, conflict with the Congressional purpose in enacting § 7476.

■ In our opinion, the Tax Court erred in finding that compliance with the notice provision of subsection (b)(2) was an *abso-*lute prerequisite to jurisdiction under § 7476. Contrary to the Tax Court's construction, subsection (b)(2) is but a discretionary limitation on a right to maintain a proceeding under § 7476. The failure to have complied with the notice provision in connection with the administrative application for qualification, standing alone, may in many cases be sufficient warrant for the Tax Court to dismiss the proceeding. But it would be an arbitrary abuse of discretion, contrary to justice and fairness, to dismiss a proceeding under § 7476 for no reason other than failure to comply with the notice provision of § 3001 when the petitioners had no opportunity or right, either under an existing statute or administrative regulation, to give such notice at the time they filed their administrative applications for qualification. That is this case.

The judgment of the Tax Court dismissing the proceedings on jurisdictional grounds is accordingly reversed and the actions are remanded to the Tax Court for further proceedings on the merits.

---

**10.** *See,* § (b)(2) of 7476, as originally offered as H.R. 12855.